IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

STEPHEN L. GRANT,

    Plaintiff,

v.                              Case No. _____

DOCTOR ("Dr.") RICHARD HEIDORN,
DR. PAUL SUMNICHT,
DR. MARY SAUVEY, and AMERICANS
WITH DISABILITY ACT ("ADA")
COODINATORS MICHELLE HAESE and
CATHERINE FRANCOIS,

    Defendants.

CIVIL RIGHTS COMPLAINT PURSUANT TO
42 U.S.C. § 1983, TITLE 11 OF THE AMERICANS
WITH DISABILITY ACT, 42 U.S.C. § 12131-12134 AND
§ 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794(a)

I.    PARTIES

    A.    Stephen L. Grant ("Plaintiff"), is an inmate at Green Bay Correctional Institution ("GBCI"), located at 2833 Riverside Drive, P.O. BOx 19033, Green Bay, Wisconsin 54307-9033.

    B.    Defendant Richard Heidorn ("Dr. Heidorn"), is a licensed Physician employed by the Wisconsin Department of Corrections ("WDOC")/Bureau of Health Services ("BHS"). He was

1.

the primary healthcare provider for all inmates at GBCI, between March 2007 and June 2012. Prior to or after June 2012, Dr. Heidorn apparently transferred to another institution or had semi-retired. He returned to GBCI temporarily in late August or early September 2013. At all times relevant to himself, Dr. Heidorn was acting under color of state law. His present employment status and address is not known to Plaintiff.

C. Defendant Paul Sumnicht ("Dr. Sumnicht"), is a licensed Physician employed by the WDOC/BHS. He was the primary healthcare provider for all inmates at GBCI between June 2012 and September 2013. At all times relevant to himself, Dr. Sumnicht was acting under color of state law. His present address is not known to Plaintiff.

D. Defendant Mary Sauvey ("Dr. Sauvey"), is a licensed Physician for the WDOC/BHS. She was the primary healthcare provider for all inmates at GBCI between late September 2013 and May 2016. At all times relevant to herself, Dr. Sauvey was acting under color of state law. Her present address is not known to Plaintiff.

E. Defendant Michelle Haese ("defendant Haese"), was the ADA Coordinator at GBCI in October 2015. As such, she was

responsible for determining whether an inmate with a disability was eligible for reasonable ADA accommodations to medical equipment/devices such as wheelchair use for distance. At all times relevant to herself, she was acting under color of state and federal law, which Plaintiff presumes receives federal funding. Her present employment status and address is not known to Plaintiff.

F.  Defendant Catherine Francois ("defendant Francois"), is the present ADA Coordinator for GBCI. As such, she is responsible for determining whether an inmate with a disability is eligible for reasonable ADA accommodations to medical equipment such as a specialized (Air, Clinitron, thicker and firmer or similar) mattress. At all times relevant to herself, she was acting under color of state and federal law which again, Plaintiff presumes receives federal funding.

All defendants are being sued in their individual capacity.

## II. STATEMENT OF CLAIMS:

A. IN VIOLATION OF PLAINTIFF'S EIGHTH AMENDMENT RIGHTS, DEFENDANTS DR. HEIDORN, DR. SUMNICHT AND DR. SAUVEY INDIVIDUALLY AND SEPARATELY WERE DELIBERATELY INDIFFERENT TO PLAINTIFF'S SERIOUS MEDICAL NEED.

3.

1. In November 1999, while Plaintiff was confined in Waupun Correctional Institution (WCI), he began having serious problems with his left knee. The problems were chronic and consisted of severe pain, swelling, locking, popping and buckling that sometimes caused Plaintiff to stumble and occasionally fall due to his knee giving out. Conservative treatments were ineffective and request for Orthopedic evaluation was denied by the Medical Director for the BHS.

2. In March 2007, Plaintiff transferred to GBCI. By 2009, Plaintiff's chronic knee problems had gotten worse or had progressed. Plaintiff could no longer squat, kneel, crawl, run, jump or go up and down more than six stair steps without excruciating pain.

3. On June 8, 2009, Plaintiff forwarded an Health Service Request (HSR) to the Health Service Unit (HSU), requesting an Magnetic Resonance Imaging (MRI) examine and/or be seen by an Orthopedist thereafter. When seen by Dr. Heidorn, he stated verbatim, "Madison (referring to BHS Medical Director), is not going to pay for an MRI or Orthopedic evaluation." Plaintiff then asked Dr. Heidorn, "to still submit the request so that if it's denied it would be documented." However, Dr. Heidorn chose not to respond.

4.  At each subsequent appointment with Dr. Heidorn, Plaintiff continued to verbally request an MRI or an Orthopedic evaluation over the course of his assignment at GBCI. Meanwhile, Dr. Heidorn's treatment of Plaintiff's knee was limited to Ibuprofen medication, several X-ray scans which in the medical field is known to reveal less details relating to soft tissue damage; an extra pillow and ice packs several times a day. As a result, in absence of an MRI or Orthopedic evaluation, Dr. Heidorn's treatment of Plaintiff's knee was totally ineffective, which exacerbated his knee problems even further.

5.  At some point after February 2012, Dr. Sumnicht became the primary healthcare provider at GBCI. On July 5, 2012, he issued an order to continue application of ice packs to Plaintiff's knee.

6.  On February 11, 2013, Dr. Sumnicht examined Plaintiff's knee by conducting a rotation test know as the Drawer and McMurray tests. When Plaintiff yelled out in pain, Dr. Sumnicht acknowledged it and pointed to the area around the knee where swelling was clearly visible.

7.  After the tests, Dr. Sumnicht advised Plaintiff that he would order an X-ray scan. Hearing this, Plaintiff stated, "I don't need another X-ray scan. I need an MRI, so we

would know what's really wrong with my knee and how to treat it." Without waiting for a response, Plaintiff abruptly removed himself from the examination table and exited Dr. Sumnicht's office.

8.  When Plaintiff returned to the housing unit, he promptly filed a complaint challenging Dr. Sumnicht's decision to order an X-ray scan rather than to submit request for an MRI scan.

9.  On March 12, 2013, Plaintiff reviewed his medical records. Within the "Progress Notes," Dr. Sumnicht indicated that the "Drawer and McMurray tests were negative." This notation baffled Plaintiff because again, Dr. Sumnicht had previous acknowledged Plaintiff's pain while conducting one of the tests.

10. On March 21, 2013, Plaintiff had another appointment with Dr. Sumnicht. Again, Plaintiff requested that Dr. Sumnicht submit a request for an MRI scan. Once again, Dr. Sumnicht refused stating, "there is no criteria for an MRI." Despite Dr. Sumnicht's refusal, Plaintiff continued to request an MRI and/or Orthopedic evaluation whenever he had an appointwith Dr. Sumnicht, during his tenure at GBCI. As a result, Dr. Sumnicht's treatment of Plaintiff's knee was similar to Dr. Heidorn's, with the addition of a Ted stocking.

6.

Totally ineffective which exacerbated the problems with Plaintiff's knee even further.

11. In late September or early October 2013, Dr. Sauvey became the primary healthcare provider at GBCI. Again, at Plaintiff's initial appointment with Dr. Sauvey, Plaintiff verbally requested an MRI scan for his knee. Not only did several more oral request follow, but Plaintiff also submitted several written HSR dated 7/11/14, 9/18/14, 5/4/15 and 11/12/15 for an MRI scan. A similar request was also forwarded to Dr. Sauvey by letter dated 1/17/15.

12. Moreover, HSR dated 5/4/15, is of particular significance because an since an MRI had already been ordered for Plaintiff's lumbar spine, Plaintiff further believed that the MRI could scan his knee at the same time. However, responding to Plaintiff's request, Dr. Sauvey indicated that an "MRI on left knee will be reviewed at later date." To Plaintiff, such response indicated there would be a delay. Regardless of this response, Plaintiff continued to request an MRI, at each appointment that followed.

13. At some point in April 2016, Dr. Sauvey tried an injection of some steroid or other medication to Plaintiff's knee. It to was ineffective. Sometime thereafter and without submitting a request for an MRI scan, Dr. Sauvey transfer-

red to another institution. Once again, Dr. Sauvey's treatment of Plaintiff's knee was limited to the one steroid injection, Ibuprofen medication, ice packs and possibly a knee brace. Again, such treatment was totally ineffective and further exacerbated the problems Plaintiff continued to have with his knee.

14. On August 31, 2016, a new primary healthcare provider (Dr. Tannen, who is not a defendant in this action,, finally ordered and/or submitted a request for an MRI scan on Plaintiff's left knee.

15. On October 27, 2016, the MRI was conducted and revealed that Plaintiff had a lateral meniscus tear, severe chrondromalacia in the lateral and patellofemoral compartments, and a small joint effusion. These diseases/problems were not revealed by X-ray scans dated 2-14-13 and 6-2-16.

16. As a result of finally having a definitive diagnosis of what was causing Plaintiff's knee problems for more than fifteen years, Plaintiff had total knee replacement surgery on August 30, 2017.

Consequently, in violation of Plaintiff's Eighth Amendment rights, Dfendants Dr. Heidorn, Dr. Sumnicht and Dr. Sauvey were deliberately indifferent to Plaintiff's serious medi-

8.

cal need, when they each individually and separately refused to order or submit request for Orthopedic evaluation or an MRI scan for Plaintiff's left knee, which further exacerbated the problems and prolonged for years the unnecessary and wanton infliction of pain, in violation of Plaintiff's eighth Amendment rights.

B. PLAINTIFF WAS DENIED WHEELCHAIR ACCOMMODATIONS FOR DISTANCE IN VIOLATION OF TITLE 11 OF THE ADA, § 504 OF THE REHABILITATION ACT AND PLAINTIFF'S EIGHTH AMENDMENT RIGHTS.

1. On October 15, 2015, defendant Haese who was the ADA Coordinator for GBCI, denied Plaintiff's request for reasonable wheelchair accommodations after consulting with an un-named HSU staff member who deemed the accommodation as medically unnecessary.

2. Plaintiff requested wheelchair accommodation because in addition to his left knee problems, Plaintiff also suffered from chronic and excruciating pain in hislower lumbar spine. This pain travels down Plaintiff's buttocks, hips, legs and the bottom of his feet. In combination, both serious medical problems made it very difficult for Plaintiff to stand stationary for longer than two - four minutes and/or walk no further than fifty feet without needing to sit down because of the pain.

9.

3.  These are major life activities that are substantially limited. Moreover, Plaintiff's pain was not as worse when he initially requested wheelchair access which Dr. Sauvey approved February 27, 2015, without restrictions. However, wheelchair use was discontinued on April 7, 2015, by a nurse who relied upon false information that a correctional officer documented in an incident report.

4.  On or about April 28, 2015, Dr. Sauvey re-issued her order for Plaintiff's continued use of the wheelchair with restrictions, which required that Plaintiff walk behind the wheelchair then sit for five minutes then continue to walk to his destination. However, Plaintiff could not continue to comply with such restrictions because it was exacerbating the pain and other problems in Plaintiff's knee and lower lumbar spine, Hence, Plaintiff's failure to continue complying with wheelchair restriction is why HSU staff and defendant Haese, deemed wheelchair accommodation not medically necessary.

5.  In addition, off-site medical clinic known as Advance Pain Management (APM)/Pain Centers of Wisconsin, has diagnosed Plaintiff for degenerative disc disease, lumbar stenosis, sciatica, diffuse disc disease, and several other diseases/conditions requiring treatment. Furthermore, APM has con-

cluded that Plaintiff is functionally impaired as measured by Oswestry disability index. Defendant Haese, could and should have but chose not to review on her own Plaintiff's medical records, nor question why HSU staff omitted the above verifying information from their consultation.

Consequently, denial of reasonable ADA accommodation violated Title 11 of the ADA, § 504 of the Rehabilitation Act and Plaintiff's Eighth Amendment rights.

C. PLAINTIFF WAS DENIED ADA ACCOMMODATION FOR A SPECIALIZED MATTRESS IN VIOLATION OF TITLE 11 OF THE ADA, § 504 OF THE REHABILITATION ACT AND PLAINTIFF'S EIGHTH AMENDMENT RIGHTS.

!. On July 28, 2017, defendant Francois, denied Plaintiff's request for a specialized ("Air") mattress. Plaintiff sought such accommodation because the regular navy blue and gray mattresses as provided by WDOC, were exacerbating the problems Plaintiff was and continues to have with his lower lumbar spine. Such mattress was substantially limiting Plaintiff's ability to sleep, which is a major life activity,

2. Plaintiff cannot sleep on his back due to the problems previously described. Plaintiff must therefore try to sleep while laying on his sides. Doing so exacerbates Plaintiff's

sciatica pain, which forces plaintiff to sleep in five to ten minutes stages for a maximum total of two hours or less of sleep per night.

Consequently, denial of reasonable ADA accommodation for a specialized mattress violated title 11 of the ADA, § 504 of the Rehabilitation Act and Plaintiff's Eighth Amendment rights.

G. **JURISDICTIONAL STATEMENT**

I am suing for a violation of federal law under 28 U.S.C. § 1331-1343(a)(3)-(4).

H. **VENUE STATEMENT**

This action is properly venue in the Eastern District pursuant to 28 U.S.C. § 1391(b)(2), as defendants are employees for the WDOC/BHS and were at all times relevant, assigned to GBCI located in Green Bay, Wisconsin.

I. **JURY DEMAND**

Plaintiff demands a jury trial of no less than six citizens to have this matter determined.

J.  **EXHAUSTION OF ADMINISTRATIVE REMEDY**

Plaintiff has exhausted all available administrative remedies relative to defendants Heidorn, Sumnicht and Sauvey via complaints GBCI-2013-2973, GBCI-2016,25575 and GBCI-2016-26238; relative to defendants Haese, via complaint GBCI-2015-20543 and defendant Francois, via complaint GBCI-2017-20387 respectively.

K.  **RRELIEF WANTED**

Plaintiff request Nominal Damages from each defendant and Punitive Damages of $30,000 from Drs. Heidorn, Sumnicht and Sauvey. And $3,000 each from defendants Haese and Francois, all individually and severally.

**CONCLUSION**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and recollection.

Dated this <u>10th</u> day of <u>November</u>, 2017.

Respectfully submitted,

*Stephen L. Grant*
Stephen L. Grant #75160
Plaintiff, pro se
Green Bay Correctional Institution
P.O. Box 19033